UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Trustees of the LOCAL NO. 1, IBEW ) <br> PENSION BENEFIT TRUST FUND and ) <br> Trustees of the ELECTRICIANS' SALARY ) <br> DEFERRAL PLAN, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>   vs. ) <br> ) <br> PAMELA WRIGHT a/k/a PAMELA DALLAS, ) <br> ) <br>     Defendant/Cross-Claimant, ) <br> ) <br>     and ) <br> ) <br> ELOISE WALKER, ) <br> ) <br>     Defendant/Cross-Respondent. ) | Case No. 4:10CV2114 JCH |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant/Cross-Claimant Pamela Wright a/k/a Pamela Dallas' ("Pamela Dallas") Motion for Summary Judgment on the Complaint and Cross Claim against Defendant/Cross-Respondent Eloise Walker ("Motion for Summary Judgment"), filed February 11, 2011. (Doc. No. 21). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Both the Local No. 1, IBEW Pension Benefit Trust Fund ("Pension Plan") and the Electricians Salary Deferral Plan ("401(k) Plan") are covered "employee pension benefit plans", as defined in Section 3(2) of ERISA, 29 U.S.C. § 1002(2). (Complaint for Interpleader, Doc. No. 1 ("Complaint" or "Compl."), ¶¶ 1, 3). The Pension Plan is governed by the Pension Fund Summary Plan Description ("SPD") and Pension Fund Trust Agreement, the latter of which at all times relevant to this suit contained the following provision:

> Section 6.03(b) Beneficiary.
>
> > (i) The Participant may name his Beneficiary on a form available from the Fund Office; if more than one Beneficiary is named, each Beneficiary who survives Participant will receive an equal share, unless otherwise specified by Participant on the form. A Participant may change his beneficiary form by filing a new one;...No beneficiary designation will be recognized unless it has been filed with the Fund Office prior to the time of Participant's death in a form which the Trustees find acceptable.
>
> > (ii) If no named Beneficiary survives the Participant, or if the Participant files no beneficiary form, then upon his death the Participant's Account balance shall be payable as follows: (1) to the Participant's spouse; (2) if no spouse survives Participant, then in equal parts to the Participant's children who survive him and to the descendants of any deceased child who survive the Participant, per stirpes; (3) if none of those mentioned in (1) or (2) survive the Participant, then to the Participant's father and mother, in equal parts, or to the survivor of them; (4) if none of those mentioned in (1), (2), or (3) survive the Participant, then to the Participant's brothers and sisters who survive him, in equal parts; (5) if none of those mentioned in (1), (2), (3), or (4) survive the Participant, then to the estate of the Participant; provided, however, that if no named Beneficiary survives the Participant, the Trustees, in their discretion and in lieu of paying any of those named above, may pay all or part of the balance remaining in the Participant's Account, up to a maximum of $2,000 for reimbursement of funeral expenses and up to a maximum of $10,000 for reimbursement of expenses of the Participant's last illness.

(Compl., ¶ 12; Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment ("Facts"), ¶¶ 2, 7). The 401(k) Plan is governed by the 401(k) Plan SPD and Plan Document, the latter of which at all times relevant to this suit contained the following provision:

> Section 5.5- Designation of Beneficiary. a. A Residual Death Benefit will be payable to a Participant's Beneficiary, pursuant to this Section, in the amount of the Participant's Individual Account balance--to the extent that the Individual Account balance is not used to provide a Pre-Retirement Spouse Benefit. And, with the written consent of his Surviving Spouse, a Participant may designate a Beneficiary (or change such designation) for the part of his Individual Account balance that would otherwise be payable to his Surviving Spouse; such designation of a Beneficiary shall not be valid if the consenting Spouse is a person other than a Surviving Spouse. The last Beneficiary form on file with the Trust Office at the time of the Participant's death shall govern. The naming of a Beneficiary and changes in Beneficiary are subject to rules and regulations of the Trustees as to the form, the number and types of Beneficiaries that may be named and as to other matters.
>
> b. If a Participant is also a Participant in the Local 1, IBEW, Pension Benefit Trust Fund (called "Pension Fund") at the time of his death, the death benefit from

this Fund payable to a Beneficiary will be paid to the same person or persons entitled to the part of the Participant's Pension Fund account balance that is not subject to payment of the Pensions Fund's surviving Spouse benefit. Such portion of the Participant's Pension Fund account balance is referred to as the "Residual Account Balance."...

c. If a Participant desires to file a separate Beneficiary card designation solely for the Death Benefit payable from this Fund (the Electricians Salary Deferral Plan), he is to secure such a card from this Fund. The Participant may name (and periodically change) the Beneficiary or Beneficiaries by completing and filing the Electricians Salary Deferral Plan Beneficiary card at the Fund Office. The last such form filed at the Fund Office before the date of the Participant's death will control payment of this Fund's Residual Death Benefit. If a separate Electricians Salary Deferral Plan Beneficiary card has been filed with the Fund Office, the procedure for paying the residual death benefit from the Pension Fund will not apply to the Residual Death Benefit payable from this Fund.

(Compl., ¶ 13; Facts, ¶¶ 3, 8).

At all material times and until his death, Decedent Bernard Walker ("Decedent") was an unmarried participant without children in both the Pension Plan and the 401(k) Plan. (Compl., ¶ 5). On March 24, 2000, Decedent signed and filed a Local 1, IBEW, Pension Benefit Trust Beneficiary Card ("Beneficiary Card") with the Pension Plan, naming Defendant Pamela Dallas[1] as his Primary Beneficiary, and Mike Davis as his Contingent Beneficiary.[2] (Compl., ¶ 14 and Beneficiary Card, Exh. A). Decedent died on October 26, 2009. (Compl., ¶ 15 and Death Certificate, Exh. B).

On or about January 6, 2010, Defendant Eloise Walker[3] filed claims for death benefits with the Plans, alleging she was the surviving beneficiary of Decedent. (Compl., ¶ 16; Facts, ¶ 11). On or about January 21, 2010, Pamela Dallas filed claims for death benefits with the Plans, claiming she

---

[1] Pamela Dallas, a resident of Chicago, Illinois, was the Decedent's cousin. (Compl., ¶ 6; Facts, ¶ 5).

[2] Decedent apparently never filed a separate Beneficiary card designation solely for the 401(k) Plan.

[3] Eloise Walker, a resident of St. Louis, Missouri, was the Decedent's mother. (Compl., ¶ 7; Facts, ¶ 6).

was the surviving and designated beneficiary of Decedent. (Compl., ¶ 19; Facts, ¶ 12). On or about February 25, 2010, and March 13, 2010, Eloise Walker (through her attorney) submitted evidence to the Plans in support of her contention that the Decedent's execution of the Beneficiary Card was due to acts of undue influence and fraud. (Compl., ¶ 20).

On March 22, 2010, the Administrative Manager of the Plans notified Defendants by letter of his decision to grant the claims of Pamela Dallas and deny those of Eloise Walker. (Compl., ¶ 21, and Decision Letter, Exh. C). In the portion of his decision entitled "Claim submission on behalf of Eloise," the Administrative Manager stated as follows:

> By email dated February 25, 2010, attorney Durphy stated that: (a) Bernard had been diagnosed as psychotic and had been committed to the Metropolitan Psychiatric Center; (b) Bernard was unable to manage his personal affairs and that his sister Sheila Cunningham had been appointed to manage his disability benefits which he received from Social Security; (c) Bernard had been diagnosed with schizophrenia and bi-polar disorder sometime in the 1990's and that he lived with his mother off and on from 1992 to 2009 when he died; (d) Eloise believed she was Bernard's beneficiary; and (e) that any designated beneficiary exploited Bernard's mental illness.

(Exh. C, P. 2). The Administrative Manager continued to itemize the documentation submitted by attorney Durphy and reviewed in connection with Eloise Walker's claims. (Id., PP. 2-4). He then described other evidence in the possession of the Plans regarding Decedent's state of mind in March, 2000, when he submitted the beneficiary designation, as follows:

> Bernard's work records show that he worked regular hours in 1998, that in 1999 he worked 142 hours in January and 100 hours in February and was unemployed for the remainder of 1999; and that Bernard was unemployed from January through June 2000 while starting in July 2000 he worked regular hours for the remainder of the year. Bernard continued to work regular hours in 2001 and 2002 until August 2002. In 2003 Bernard resumed working regular hours from July through December 2003. Bernard last worked in January 2004.
>
> The Pension Plan and 401(k) Plan records show that Bernard actively managed the investments in his account on December 7, 1998, on December 12, 2005, and on April 12, 2007.

(Id., P. 4). The Administrative Manager then issued his decision on the death benefit claims, as follows:

> Pension Plan SPD Section 7.2 and Pension Plan Trust Agreement Section 6.03(b) provide that an unmarried participant has the right to name his beneficiary on forms provided by the Fund Office. Pension Plan SPD Section 7.3 and Pension Plan Trust Agreement Section 6.03(b) provide that "if [a participant] has not filed a Beneficiary designation card," then the account balance is payable to surviving members of the first of the following classes: Class 1-Participant's spouse; Class 2-Participant's children or descendants per stirpes; Class 3-parents in equal shares; Class 4-brothers and sisters; and Class 5-Participant's estate. Similarly, Section 5.2 of the 401(k) Plan SPD and Section 5.5 of the 401(k) Plan provide that in the case of an unmarried participant, a death benefit under the 401(k) Plan is paid to the designated beneficiary on the Pension Plan form if the employee participated in both Plans. Section 5.3 of the 401(k) Plan SPD and Section 5.2 of the 401(k) Plan have the same rule as the Pension Plan if a beneficiary is not designated.
>
> In her claim, Eloise requests that the Plans set aside the March 24, 2000 beneficiary designation claiming that Bernard acted under undue influence or as a result of fraud committed by Pamela. Eloise has submitted evidence regarding Bernard's mental health during the 1980's and until his death. There has been no specific evidence about his mental capacity in March 2000 when he signed the election form. Eloise has submitted some evidence that in 2004 after Bernard ceased employment as an electrician, Bernard was committed to a public institution for a limited period of time. However, the records of the Plans show that Bernard worked as a fulltime electrician before and after he completed the beneficiary election, and that he handled the investments in his accounts after March 2000 on three separate occasions. In addition, no evidence has been submitted that Pamela who currently lives in the Chicago area had a confidential relationship with Bernard (who resided in St. Louis) in March 2000 or was otherwise involved in his decision to name her as his beneficiary.
>
> I have concluded that the plain language of Pension Plan SPD Section 7.2/Pension Plan Trust Agreement Section 6.03(b) and 401(k) Plan SPD Section 5.2/401(k) Plan Section 5.5 provide that the two death benefits are payable to Pamela who is the primary beneficiary designated by Bernard on the March 24, 2000 election form. Eloise has not submitted specific evidence of Bernard's lack of mental capacity, undue influence or fraud in March 2000. Therefore, pursuant to the claims procedures of the Pension Plan and the 401(k) Plan, I have decided to grant the claims of Pamela who was Bernard's designated beneficiary, and deny the claims of Eloise.

(Id., P. 5).

On June 18, 2010, Eloise Walker filed an appeal of the Administrative Manager's March 22, 2010, decision with the Plans' Appeals Committees. (Compl., ¶ 22). Pamela Dallas filed a response to the appeal, and on September 20, 2010, the Appeals Committees issued a written decision affirming the ruling of the Administrative Manager. (Id., ¶¶ 23, 24, and Appeals Committees Decision Letter, Exh. D).

Trustees of the Plans filed the instant Complaint for Interpleader on November 9, 2010. (Doc. No. 1). In their Complaint, Plaintiffs claimed that because Pamela Dallas and Eloise Walker have each represented themselves to be the surviving beneficiary of Decedent, the Plans may be exposed to multiple liability should Eloise Walker file a lawsuit seeking judicial review of the Appeals Committees' decision. (Compl., ¶¶ 8, 25). The Plans therefore requested that the Court permit them to pay the total amount of the death benefits into the Court's registry, and then dismiss the Plans with prejudice, releasing and discharging them from any and all claims of any person to the benefits payable by the Plans. (Id., P. 8). The Plans further requested that the Court determine which person or persons is entitled to receive payment of said sum of money. (Id., P. 9).

On December 15, 2010, the Court granted the parties' Joint Motion for Order to Deposit Funds into the Court's registry, and ordered Plaintiffs to deposit the Pension Plan and 401(k) Plan death benefits payable as a result of Decedent's death with the Court's registry, to be held in an interest bearing account and disbursed by the Court upon judgment in this case. (Doc. No. 14). Plaintiffs deposited the commuted values of the Pension Plan and 401(k) Plan death benefits with the Court on January 4, 2011. (Doc. No. 17). On February 15, 2011, the Court granted the parties' Joint Motion for Discharge of Plaintiffs, and dismissed Plaintiffs from this action with prejudice. (Doc. No. 24).

On January 4, 2011, Pamela Dallas filed her Answer to Plaintiffs' Complaint, together with her cross-claim against Eloise Walker. (Doc. No. 18). In her cross-claim, Pamela Dallas asserts that given the Trustees' ruling and the Appeals Committees' decision, Eloise Walker has no justification or good faith argument for a claim to the funds contained in either the Pension Plan or the 401(k) Plan. (Id., ¶ 25). Pamela Dallas therefore requests that the Court enter a judgment in favor of Pamela Dallas for the full amount of the proceeds of the Pension Plan and 401(k) Plan of Decedent. (Id., P. 13). As stated above, Pamela Dallas filed the instant Motion for Summary Judgment on both Plaintiffs' Complaint and Pamela Dallas' cross-claim on February 11, 2011. (Doc. No. 21).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The Supreme Court recently held that, "ERISA requires '[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), 'specify[ing] the basis on which payments are made to and from the plan,' § 1102(b)(4)." Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, 555 U.S. 285, 129 S.Ct. 865, 875, 172 L.Ed.2d 662 (2009). "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'" Id. at 875-876 (quoting Fox Valley & Vicinity Const. Workers Pension Fund v. Brown, 897 F.2d 275, 283 (C.A.7 1990) (Easterbrook, J., dissenting)).

Under ERISA, a plan beneficiary may bring a civil action to "recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Eighth Circuit has held that, "[t]he district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility

determinations, when review is for abuse of discretion."[4]  Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted).

In the instant case, because it is undisputed that both the Pension Plan and the 401(k) Plan granted the Plan Administrator discretionary authority to construe terms and determine eligibility for benefits, the standard of review for this Court is abuse of discretion.  (See 401(k) Plan SPD, §§ 9.4 and 10.9, attached to Facts as Exh. B; Pension Plan SPD, §§ 10.4 and 11.8, attached to Facts as Exh. A).

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence.  In considering the reasonableness of a plan administrator's fact-based [] determination, courts should consider whether the decision is supported by substantial evidence.  Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotations and citations omitted).  In making this determination, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales."  King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (internal quotations and citation omitted).[5]  Finally, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo."  Phillips-Foster v. UNUM Life Ins. Co. of America, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted).

---

[4] "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan."  Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 883 (8th Cir. 2002) (internal quotations and citations omitted).

[5] In light of this standard, the Court must deny Eloise Walker's repeated requests to subpoena and present witnesses, affidavits, and Decedent's medical, school and work records, in an effort to prove her claim.

Upon consideration of the record before it, the Court cannot say the Plan Administrator abused his discretion in deciding to pay benefits to Pamela Dallas rather than Eloise Walker, for several reasons. First, the Pension Plan contained clear provisions allowing a participant to name his beneficiary on a form available from the Fund Office, and to change his beneficiary form by filing a new one. (See Pension Fund Trust Agreement, § 6.03(b)(i)). The 401(k) Plan provided that a residual death benefit in the amount of the participant's individual account balance would be payable to the participant's beneficiary, and that the last beneficiary form on file with the Trust Office at the time of the participant's death would govern. (See 401(k) Plan Document, § 5.5(a)). Finally, the 401(k) Plan provided that if the participant was also a participant in the Pension Plan at the time of his death, then in the absence of other instructions the death benefit from the 401(k) Plan would be payable to same beneficiary as that listed with the Pension Plan. (Id., § 5.5(b)).

It is undisputed that the last Beneficiary Card on file with the Trust Office at the time of Decedent's death listed Pamela Dallas as his beneficiary. (Compl., Exh. A). In submitting her claims for death benefits with the Plans, Eloise Walker argued that Decedent suffered from severe mental illness from a time prior to his execution of the Beneficiary Card until his death, and that any change in his designated beneficiary therefore was executed as a result of undue influence and fraud on the part of Pamela Dallas. (Compl., ¶ 20; Exh. C, P. 2). As stated above, however, after noting that the Plans permitted Decedent to name his own beneficiary, the Plan Administrator rejected Eloise Walker's claims, as follows:

> In her claim, Eloise requests that the Plans set aside the March 24, 2000 beneficiary designation claiming that Bernard acted under undue influence or as a result of fraud committed by Pamela. Eloise has submitted evidence regarding Bernard's mental health during the 1980's and until his death. There has been no specific evidence about his mental capacity in March 2000 when he signed the election form. Eloise has submitted some evidence that in 2004 after Bernard ceased employment as an electrician, Bernard was committed to a public institution for a limited period of time.

> However, the records of the Plans show that Bernard worked as a fulltime electrician before and after he completed the beneficiary election, and that he handled the investments in his accounts after March 2000 on three separate occasions. In addition, no evidence has been submitted that Pamela who currently lives in the Chicago area had a confidential relationship with Bernard (who resided in St. Louis) in March 2000 or was otherwise involved in his decision to name her as his beneficiary.
>
> I have concluded that the plain language of Pension Plan SPD Section 7.2/Pension Plan Trust Agreement Section 6.03(b) and 401(k) Plan SPD Section 5.2/401(k) Plan Section 5.5 provide that the two death benefits are payable to Pamela who is the primary beneficiary designated by Bernard on the March 24, 2000 election form. Eloise has not submitted specific evidence of Bernard's lack of mental capacity, undue influence or fraud in March 2000. Therefore, pursuant to the claims procedures of the Pension Plan and the 401(k) Plan, I have decided to grant the claims of Pamela who was Bernard's designated beneficiary, and deny the claims of Eloise.

(Exh. C, P. 5).

In light of the foregoing, the Court finds the Plan Administrator offered a "reasonable explanation for its decision." Fletcher-Merrit, 250 F.3d at 1180. In other words, the Plan Administrator's decision to deny Eloise Walker benefits was supported by substantial evidence, and thus, even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." Id. See also Matschiner v. Hartford Life and Acc. Ins. Co., 622 F.3d 885, 888 (8th Cir. 2010) (citation omitted) ("[W]e conclude that [the plan administrator] acted in accordance with the plan documents and therefore did not abuse its discretion."). Pamela Dallas's Motion for Summary Judgment must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Cross-Claimant Pamela Wright a/k/a Pamela Dallas' Motion for Summary Judgment on the Complaint and Cross Claim against Defendant/Cross-Respondent Eloise Walker (Doc. No. 21) is **GRANTED**, and the decision of the Administrative

Manager and Appeals Committees to deny and foreclose all claims of Eloise Walker for the full amount of the proceeds of the Pension Plan and 401(k) Plan of Decedent is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Court will enter a Judgment in favor of Defendant/Cross-Claimant Pamela Dallas, and order the Clerk of the Court to turn over the funds deposited by Plaintiffs on or about January 4, 2011, to Defendant/Cross-Claimant Pamela Dallas.

Dated this 25th day of April, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE